Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1020 | **DATE** | 7/16/2001 |
| **CASE TITLE** | Spencer vs. Thomas | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons set forth on the attached order, defendant's motion for summary judgment (16-1) is granted. Enter judgment in favor of defendant.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JUL 18 2001 | |
| | Notified counsel by telephone. | date docketed | 27 |
| ✓ | Docketing to mail notices. | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING | |
| OR | courtroom deputy's initials | 01 JUL 17 AM 10: 13 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BEVERLY SPENCER,            )
                            )
            Plaintiff,      )
                            )
    vs.                     )   Case No. 00 C 1020
                            )
CHERRYL T. THOMAS, Chairman of the )
United States Railroad Retirement Board, )
                            )
            Defendant.      )

DOCKETED
JUL 1 8 2001

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Beverly Spencer was employed as an auditor with the United States Railroad Retirement Board's Office of Inspector General from 1989 through December 1999, when she was terminated allegedly for taking excessive unexcused absences. In this lawsuit, Spencer does not challenge her termination, which was still on appeal before the Merit Systems Protection Board when this action was filed. *See* Cplt. ¶11; Pltf. Rule 56.1(b)(3) Stmt. ¶17.[1] Rather, she claims that her suspension in August-September 1998, the Board's refusal to give her an accommodation for health problems that she faced on the job, and various other actions taken by her supervisors, were done because she is African-American and in retaliation for her complaints of discrimination, in violation of Title VII of the Civil Rights Act of 1964. Defendant Cherryl Thomas, Chairman of the Railroad Retirement Board, has moved for summary judgment.

---

[1] On January 31, 2001, an Administrative Law Judge with the MSPB upheld the termination. Plaintiff's Rule 56.1(b)(3) Statement, however, indicates that she has appealed the ALJ's decision within the MSPB. Pltf. Rule 56.1(b)(3) Stmt. ¶17.



**Facts**

Because Thomas has moved for summary judgment, we view the facts in the light most favorable to Spencer, drawing reasonable inferences in her favor.

Spencer's job as an auditor in OIG involved reviewing data, observing operations, and writing reports. Her immediate supervisor was Supervisory Auditor Richard Erickson; Erickson's superior was Assistant Inspector General for Audit Henrietta Shaw.

On January 29, 1998, workers were removing tiles in the RRB's offices on the near north side of Chicago using a solvent that gave off strong fumes. Because of the fumes, all employees were sent home early. Though Spencer did not seek medical attention that day, she experienced dry eyes, nasal problems, and nausea. When she returned to work the next day, she could still smell the solvent. In early February, she saw a doctor and got medication for her eyes and nose.

Even though the solvent used on January 29, 1998 was not used after that date, Spencer experienced a recurrence of her symptoms when she returned to the building. She was eventually diagnosed with asthma and "multiple chemical sensitivity." Spencer did not work on February 5 or 6, and she was also absent from February 20 through March 18, 1998.

Spencer says that in March, she advised Erickson and Shaw of her ongoing medical problems, and that on March 5, Erickson told her that she could have "alternative work." Though there is some indication that at least part of Spencer's job could have been performed off-site, there is no evidence that any other auditor had ever done so or asked to do so.

According to Spencer, Erickson told her on March 18 that off-site work was not available, and he denied ever having suggested otherwise. Spencer returned to work on March 19-20 but suffered a recurrence of her symptoms and could not return after March 20. On April

2

21, 1998, Spencer notified Shaw in writing that she could not work in the building until construction work was completed and formally asked to work at home until that time. On April 30, Spencer contacted the Board's equal employment opportunity counselor for assistance in requesting an accommodation; she claims the counselor advised Erickson and Shaw of their discussion.

On May 5, Spencer sent Erickson a letter identifying possible accommodations and asking to meet and discuss them. On May 12, Erickson replied, stating that further medical documentation was required in order for the Board to evaluate Spencer's request. Spencer provided further information from her doctors on May 30; it is not clear from the record what exactly was provided.

On June 9, 1998, Erickson informed Spencer in writing that her request to work at home was denied because the solvent that had initially caused her problem was no longer in use and the building's air tested normal. Erickson directed her to report to work on June 16 or face discipline. On June 10, perhaps before she had received Erickson's letter, Spencer filed a complaint of discrimination with the Board's EEO counselor. In the complaint, Spencer stated that she had been denied an accommodation for her illness, and she complained of the Board's delay in dealing with her request; she claimed discrimination based on race and disability.

Spencer complied with Erickson's order to return to work on June 16, but she experienced difficulty breathing and had to be taken to a hospital by paramedics. She evidently renewed her request for an accommodation, but on July 17, Shaw denied the request in writing. Shaw's letter stated that Spencer had failed to respond to several requests for medical documentation and had refused to permit doctors reviewing the matter for the Board to talk to her

doctors. Shaw directed Spencer to report to work on July 20 or face discipline. Spencer did so, but she again experienced medical problems and had to leave work.

Spencer was suspended for a three day period in August 1998, and for a ten day period in September-October 1998, both times because she had been absent without leave. The letters advising her of the suspensions stated that she had not followed the proper procedures for requesting leave.

Spencer returned to work on February 1, 1999 and remained on the job until mid-April. On May 11, 1999, she filed a second EEO charge, claiming discrimination based on race and gender, as well as retaliation. In the charge, she alleged that on February 2, she had been required to keep a detailed time sheet, unlike two white male employees who Spencer said had "established time and attendance problems." Spencer also claimed that on February 1, Erickson had falsely accused her of taking an extended lunch break, and that on February 4, Erickson had ignored her request for assistance in recovering data from her computer.

Spencer was terminated in December 1999 for being absent without leave from September 4-25, 1998;[2] October 9, 1998 - January 29, 1999, and May 3 - November 4, 1999. She filed a third EEO charge challenging her termination and Erickson's "obsessive[] critic[ism]" of her work, claiming that she had been retaliated against for making her earlier EEO charges.

Until 1998, Spencer had always received satisfactory annual performance evaluations. In October 1998 Spencer was given an unsatisfactory performance evaluation. This was about four months after she filed her initial EEO charge. Thomas says that the deficiencies in Spencer's

---

[2] Spencer's second suspension had lasted from September 25 through October 8, 1998.

4

work dated back to October 1998 and that they were communicated to her in an interim evaluation dated March 1998. Spencer, however, denies receiving this evaluation and says that the first she was told of any problems was in October. She also says that Erickson had not actually observed her performance for most of the period covered by the October 1998 evaluation, and that employees who received unsatisfactory reviews were always put on "performance improvement plans," but that this was not done in her case. She claims that the negative review was trumped-up in retaliation for her filing of the EEO charge in June 1998. There is no evidence, however, that the negative review was relied upon by the Board in suspending or terminating her.

Spencer's complaint filed in this Court does not include a claim of disability or gender discrimination; rather, her claims are limited to race discrimination and retaliation. In addition, as noted earlier, her complaint does not challenge her termination.

## Discussion

Spencer claims that the denial of her request for an accommodation; the orders that she return to work; the unsatisfactory evaluations; the suspension; and various on-the-job requirements imposed on her were discriminatory and/or retaliatory. Thomas argues that several of these matters do not constitute "adverse action" sufficiently detrimental to be actionable under Title VII. *See generally Smart v. Ball State University*, 89 F.3d 437, 441 (7th Cir. 1996). The Court agrees in part. There is no evidence that the adverse evaluations were used by the Board as the basis for any sanction of any sort; standing alone, an adverse evaluation is not actionable. *Id.* at 442; *Oest v. Illinois Department of Corrections*, 240 F.3d 605, 613 (7th Cir. 2001); *Sweeney v. West*, 149 F.3d 550, 556 (7th Cir. 1998). Likewise, requiring Spencer to document her time and

5

to work at her desk, failing to give her assistance on her computer, and the manner in which her supervisors communicated with her, did not significantly affect her job responsibilities and thus do not constitute the type of adverse action necessary to bring Title VII's proscriptions into play. *See, e.g., Murray v. Chicago Transit Authority*, 252 F.3d 880, 888 (7th Cir. 2001); *Johnson v. City of Fort Wayne*, 91 F.3d 922, 932 (7th Cir. 1996). The directives that Spencer return to work in June and July 1998, however, could be considered a "material adverse change in the terms and conditions of employment," *see Crady v. Liberty National Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993), in the unusual circumstances present here, as there is evidence indicating that Spencer experienced significant adverse health effects when at the Board's offices.

Thomas also argues that Spencer cannot challenge her suspensions in this case because she failed to attack them in her EEO complaints and thus did not exhaust her administrative remedies, as Title VII requires. *See Brown v. General Services Administration*, 425 U.S. 820, 832-33 (1976). A Title VII plaintiff is, as a general rule, precluded from bringing claims that were not in her administrative charge. *See, e.g., Cheek v. Western & Southern Life Insurance Co.*, 31 F.3d 479, 500 (7th Cir. 1994). This requirement does not apply, however, to claims that an employee was retaliated against for making an administrative charge. *See, e.g., Heuer v. Weil-McLain*, 203 F.3d 1021, 1023 (7th Cir. 2000); *McKenzie v. Illinois Department of Transportation*, 92 F.3d 473, 482 (7th Cir. 1996). And Spencer's contention that she was suspended based on her race is reasonably related to, and grows out of, her claim that she was denied an accommodation based on her race: Spencer says that the failure to accommodate is the reason why she could not return to work, which in turn was the basis used by the Board to suspend her in August and September 1998. Under the circumstances, the Court may properly

address that claim on the merits. *See McKenzie*, 92 F.3d at 481 (court may address claims not specifically included in administrative charge which are reasonably related to, and grow out of, claims that were in the charge).

Thomas also contends that Spencer's claim that she was improperly denied an accommodation is not cognizable in this case because she is not claiming discrimination based on disability. But surely it cannot be the case that an employer that provides accommodations to employees who do not necessarily qualify for them under the Rehabilitation Act or the Americans with Disabilities Act is allowed to dole out such favors based on the employee's race, or sex, or national origin. Thus, although disability discrimination is the rubric under which the Court ordinarily sees such claims, one can imagine circumstances in which a claim of denial of an accommodation based on race would fly. Spencer's failure-to-accommodate claim is cognizable under Title VII.

This brings us to the merits regarding Spencer's claims regarding the denial of an accommodation, the directives to return to work, and the suspensions. Thomas argues that Spencer has failed to make out a prima facie case of race discrimination under the burden-shifting method of proof originally set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), primarily because she has failed to provide evidence from which a reasonable fact finder could conclude that she was performing satisfactorily. The Court need not address this argument, however, as Spencer has not provided any evidence from which a fact finder could conclude that the reasons given by the Board for the adverse actions of which Spencer complains were a pretext for either race discrimination or retaliation.

In addressing the issue of pretext, the Court is not concerned with whether the Board's

actions were fair, or whether they represent the way an ideal employer would act in the circumstances. Rather, the issue is whether the reasons that the Board offered were the real reasons for its actions. *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981), or to put it another way, whether the employer's explanation was honest *See, e.g., O'Regan v. Arbitration Forms, Inc.*, 246 F.3d 975, 984 (7th Cir. 2001). A plaintiff can survive summary judgment in these circumstances by offering "evidence tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the [action] in question, or were insufficient to motivate the [employer's action]." *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 888 (7th Cir. 2001). One method of doing this, though certainly not the only such method, is to provide evidence indicating that employees outside the protected class (i.e., non-African-American employees, or employees who had not made discrimination claims) were treated better than the plaintiff. Spencer has provided no such evidence.

Nor has Spencer provided any admissible evidence from which a reasonable fact finder could conclude that the Board acted for any reasons other than the ones it gave. With regard to the alleged failure to accommodate and the resulting directive to return to work, Spencer has provided no evidence that sheds any doubt on the honesty of the Board's belief that she had failed to provide sufficient support from physicians for her claim that she was suffering adverse health effects from being at work even after the solvent was no longer being used and was shown by testing to be absent from the air. Indeed, when Spencer went to the hospital after she had to leave work in June, the treating doctor released her to return to work within one day. After that date Spencer provided no further medical evidence supporting her accommodation request and declined to authorize the Board to communicate with her doctors. We do not intend by this to

8

suggest that we doubt Spencer's claim that she continued to suffer adverse health effects from being at work. But the issue in this context is whether the Board's stated reason for ordering her back to work – that she had not provided sufficient medical evidence to support her claim – was the real reason for the Board's actions. Spencer has failed to provide any evidence from which a fact finder could conclude that it was not.

Spencer's challenge to the suspensions is linked to her attack on the orders directing her to return to work. She says that defendant ordered her back to work knowing full well that she could not safely be at the Board's offices, and then suspended her for failing to come back to work. But the suspensions were not based on Thomas' mere absence, rather they were based on her absence *without leave*: the letters imposing the suspensions both cited her failure to follow proper procedures for requesting a leave. Thomas has provided the Court with no evidence or argument to suggest that the Board's insistence on following procedure was baseless, trumped up, or not the actual motivation for the suspensions.

## Conclusion

For the reasons stated above, defendant's motion for summary judgment [Docket Item 16-1] is granted. The Clerk is directed to enter judgment in favor of defendant.

MATTHEW F. KENNELLY
United States District Judge

Date: July 16, 2001